The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Lorrie L. Dollar and the briefs and oral arguments before the Full Commission. The appealing party has not shown good ground to reconsider the evidence, receive further evidence, rehear the parties or their representatives, or amend the Opinion and Award.
* * * * * * * * * * *
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing as:
STIPULATIONS
1. The parties were subject to and bound by the provisions of the North Carolina Worker's Compensation Act, and the employment relationship existed between the parties at the relevant time.
2. The defendant-employer was a duly qualified self-insured.
3. The plaintiff's average weekly wage was $283.94, which yields a weekly compensation rate of $189.30, per the stipulated Form 22.
4. The issue for determination is whether the plaintiff has sustained a compensable occupational disease, and if so, to what benefits she may be entitled.
* * * * * * * * * * *
The Full Commission adopts the findings of fact found by the Deputy Commissioner as follows:
FINDINGS OF FACT
1. At the time of the hearing, the plaintiff was a thirty-eight year old high school graduate who was the mother of a twenty year old child.
2. The plaintiff sustained injuries to her extremities in a 1984 automobile accident for which she was treated by her family doctor, Dr. T. L. Foster.
3. The plaintiff received treatment from the Orthopedic Pain Center in Charlotte in 1987 and 1988.
4. The plaintiff sustained injuries to her right hand, wrist, arm, and left arm in a 1990 collision with a tractor-trailer. X-rays revealed a partial dislocation of the first metacarpal joint of the right hand. The plaintiff was treated by Dr. Foster for pain in the left side of her face, right wrist, hand and upper arm, left anterior chest, and left upper arm and neck. As early as June 21, 1990, Dr. Foster diagnosed the plaintiff as having chronic myofascial pain of the neck, left upper back and shoulders, and paresthesias of the right hand.
5. The plaintiff began working for defendant in 1987 as a chore worker. Her duties included preparing meals, house cleaning, grocery shopping, washing laundry, monitoring medication, and bathing clients with limited mobility. Some of the plaintiff's clients also required assistance to get in and out of bed and go to the bathroom, for which plaintiff used a Hoyle lift to assist in transferring the client.
6. The Hoyle lift consists of a harness of canvas and chains which is positioned under the patient. The lift is then pumped like a car jack, by using a long handle.
7. In 1991, the plaintiff was assigned to work with a fifty-four year old paralyzed male client who weighed approximately two hundred pounds and who was unable to care for himself or to assist with the use of the Hoyle lift. The Hoyle lift transfer process took approximately five to seven minutes to complete for this patient, and generally three transfers were made during plaintiff's daily routine with this client.
8. The plaintiff found this Hoyle lift to be particularly difficult to pump, although her co-worker had no difficulty with the lift.
9. In February of 1992, the plaintiff experienced an episode of excruciating pain in her right wrist and hand, with a shooting pain up the right arm while using the lift. The plaintiff reported this episode of right arm pain to Ms. Houston who was her supervisor.
10. The plaintiff was out of work from one week in February of 1992 due to her right arm pain. However, she did not seek medical treatment and was not authorized to remain out of work by any doctor.
11. The plaintiff went to Dr. Foster on or about March 12, 1992, at which time she related a history of an episode of right arm pain after using the lift. Dr. Foster initially suspected carpal tunnel syndrome, and he referred the plaintiff to an orthopedic specialist for an evaluation.
12. The plaintiff was seen by Dr. John Gaul at Charlotte Orthopedic on April 7, 1992 upon referral through her P.P.O. health insurance plan. The plaintiff related a history of the onset of right arm pain after using a patient lift. Dr. Gaul initially suspected carpal tunnel syndrome, and ordered an EMG.
13. The EMG study was reported as negative. Thereafter, Dr. Gaul diagnosed plaintiff as having subluxation of the CMC joint, for which he eventually recommended either a fusion or reconstructive surgery.
14. On July 30, 1992, Dr. Gaul performed surgery on plaintiff's right wrist at which time he found arthritis of the joint surface. A fusion operation was performed using a bone graft from the wrist with pins to secure the joint. The pins were removed in September of 1992 after plaintiff had healed sufficiently.
15. The plaintiff began to voice complaints of left arm, neck and back pain, as well as pain in the left side of her body. On December 11, 1992, Dr. Gaul performed surgery on plaintiff's left hand to tighten the ligament.
16. Dr. Gaul has opined that plaintiff's arthritic condition in the right CMC joint was a wear and tear of the cartilage consistent with a traumatic or osteoarthritis of the joint. Dr. Gaul further explained that an osteoarthritic condition such as plaintiff's would usually take years to develop and that a person with subluxation would be predisposed to arthritic changes.
17. Dr. Hamaty at Presbyterian Hospital Pain Center noted that plaintiff had systemic joint laxity in her knees, fingers, and elbows, not just in her right hand.
18. The plaintiff never advised Dr. Gaul of her prior automobile accidents nor of the serious injuries she sustained therein. The plaintiff also did not disclose to Dr. Gaul that she had previously been diagnosed with myofascial pain syndrome as a result of the tractor-trailer collision.
19. Dr. Gaul opined that using the Hoyle lift may have aggravated plaintiff's pre-existing subluxation but it did not cause the condition. However, he further stated that using the lift would not have aggravated plaintiff's osteoarthritis unless she somehow twisted her wrist on the lift.
20. There was no evidence offered by the plaintiff to suggest that she twisted her wrist while operating the lift.
21. There is insufficient evidence of record from which to prove by the greater weight that plaintiff sustained an injury by accident in February of 1992 while using the Hoyle lift.
22. There is insufficient evidence of record from which to prove by the greater weight that plaintiff's left hand symptoms were causally related to her employment.
* * * * * * * * * * *
Based upon the findings of fact, the Full Commission concludes as follows:
CONCLUSIONS OF LAW
1. The plaintiff did not sustain an injury by accident arising out of and in the course of her employment in February of 1992. N.C. GEN. STAT. § 97-2 (6).
2. The plaintiff has failed to carry the burden of proof to establish that she contracted an occupational disease arising out of and in the course of her employment in February of 1992. N.C. GEN. STAT. § 97-53.
3. The plaintiff did not sustain an aggravation of a pre-existing condition as a result of an injury by accident arising out of and in the course of her employment. Anderson v.Motor Co., 233 N.C. 372, 64 S.E.2d 265 (1951).
* * * * * * * * * * *
Based on the foregoing findings of fact and conclusions of law, the Full Commission affirms the holding of the Deputy Commissioner and enters the following:
ORDER
1. Plaintiff's claim is, and under the law must be, DENIED.
2. Each side shall pay its own costs, except that defendants shall pay an expert witness fee of $400.00 to John Stuart Gaul, III.
This ___ day of September, 1996.
 S/ _________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
CONCURRING:
S/ _________________ DOUGLAS E. BERGER DEPUTY COMMISSIONER
DISSENTING:
S/ _________________ J. RANDOLPH WARD COMMISSIONER
LKM/bjp